W. & W. Corporation, a Florida Corporation, *Appellant*, v. Max Feit, Lazarus Abramovitz, and Tessie Glickman, a feme covert, and H. E. Glickman, her husband, and Guy V. Williams, Receiver, *Appellees*.

En Banc.

Opinion filed March 11, 1931.

Petition for rehearing denied March 20, 1931.

*Marion Brooks*, for Appellant;

No appearance for Appellees.

Per Curiam.—The appellant leased the Leonard Hotel property at Miami Beach to Max Feit and Lazarus Abramovitz who were agents for Tessie Glickman, a married woman but whose name at the time of the lease was not disclosed to the lessor, for a period of eleven months to and including September 30, 1930, for the sum of Thirteen Thousand Dollars. The terms were Five Thousand Dollars cash; One Thousand Dollars on or before January 1, 1930; Two Thousand Five Hundred Dollars on or

before January 15, 1930; Three Thousand Dollars on or before February 1, 1930 and Fifteen Hundred Dollars on or before February 15, 1930.

On January 30, 1930, the W. & W. Corporation commenced its suit in the Chancery Court for Dade County against Feit, Abramvitz and Tessie Glickman and her husband for an injunction to restrain the defendants from "intervening in the management of the property or the collection of any rents" and for a receiver to take charge of the property and operate it and to collect rents and that the leasehold estate be declared to be the separate property of Mrs. Tessie Glickman and be charged in equity for the balance alleged to be due to the complainant which was alleged to be Seven Thousand Dollars because of an acceleration clause contained in the lease which matured the entire debt in the event of the failure to pay any of the installments. The installment of Twenty-Five Hundred Dollars due on January 15, 1930, was not paid as it was alleged. A further sum of One Thousand Dollars was claimed as security for the return of the furniture.

The Chancellor appointed a Receiver by order dated January 30, 1930, requiring the complainant to make a bond of One Thousand Dollars payable to the defendants to secure all costs, damages and expenses that the defendants might sustain in the event the "receivership is subsequently dismissed or dissolved". The Receiver was required to make a bond in the sum of Three Thousand Dollars conditioned upon the faithful performance of his duties.

On the 13th day of February, 1930, the parties by their counsel entered into a stipulation based upon the consideration that the cause had been amicably settled

to the satisfaction of all the parties. The agreement contained provisions to the effect that the bill of complaint be dismissed; that the Leonard Hotel property be delivered to complainant; that all money and property in the hands of the Receiver be delivered to the complainant except such fees as the court should allow him and the sum of One Hundred and fifty-five dollars to be paid as solicitors' fees; that the court appoint a day for an accounting by the Receiver and that all furniture and furnishings that were taken by the lessees Max Feit and Lazarus Abramvitz according to a certain inventory attached to the lease should be returned to the hotel and Max Feit should ''forfeit the property of his own now in the hotel''.

On the same day one of the Judges of the Court entered his order of dismissal based upon the stipulation, ordered the Hotel property to be delivered to the complainant and the Receiver to make his final report on or before March 13, 1930. Thereupon the Receiver filed his petition praying the court to stay the operation and effect of the order setting forth sufficient grounds for such a prayer.

The Judge who made the order of dismissal based upon the stipulation temporarily stayed that order and referred the cause to the Judge before whom the application for the Receiver was made and who made the order appointing the Receiver. The complainant then moved the court to reinstate the first order as the stipulation had been carried into effect by the complainant paying over to the defendants the sum of six hundred dollars, that the stipulation was a valid agreement between the parties and that neither party had applied for the second order staying the dismissal of the cause.

This motion was followed by a petition interposed by the complainant setting forth that in view of the order of dismissal and the stipulation between the parties that there was no necessity for the Receiver to remain in possession of the property. It prayed that the original order be set aside and direct the Receiver to deliver the properties to the defendants and that the Receiver be directed and to make up his account at such time and place as the court in its discretion should deem proper and that when the final account was approved the funds in the hands of the Receiver should be paid over in accordance with the terms of the stipulation. The motion was agreed to by defendants and was asked to be considered as a stipulation between the parties.

The Court thereupon entered its order: The Receiver to deliver possession of the Hotel property and all furniture, fixtures and equipment to the defendants, who shall take possession subject to all contracts made by the Receiver pertaining to the management of and operation of the property; that part of the original order requiring the Receiver to deliver the property to the complainant was vacated and set aside; the Receiver was required to make a full report on or before March 13, 1930, together with any application for allowance as compensation and as attorneys' fees. The employment by the Receiver of certain attorneys was approved and the Receiver was authorized to engage counsel to "cooperate and advise with him in the preparation of a final report".

On March the 13, 1930, the Receiver made his final report. It was a lengthy document setting out in detail all the activities of the Receiver and showed meticulous care of the properties, competent management, frequent

conferences with his attorneys relative to the "business of the receivership", which amounted in dollars ·to approximately Five Thousand Dollars for a period running from "5:45 o'clock, P. M. on the 30th day of January, A. D. 1930 up to and including two o'clock P. M. on the 24th day of February, A. D. 1930", a period of about twenty-four days.

The report recommended the payment of $500. to J. A. Cleveland as Trustee on an original lease between him and the complainant; $250. as attorneys' fees and a further sum to attorneys for aid in preparing the report and a Thousand Dollars to himself for services.

The complainant attacked the report charging the Receiver with negligence; mismanagement of the properties; falsification of his accounts; extravagance; incapacity; the employment of clerks at a dollar per hour; charged the Receiver with receiving his board and lodging free, including personal expenses in his accounts as Receiver; charging up for his services more time than he could possibly devote to his labors; paying for services which were rendered by Clerks before his appointment; engaging more clerks than necessary and paying them extravagant salaries and attacked the report as incorrect in many particulars. This arraignment of the Receiver contained ten pages of typewritten matter besides many pages of exhibits. The complainants then moved that the matter be referred to a master in chancery with instructions to take testimony and report his findings in fact and law together with his recommendations.

The court overruled the objections to the report; confirmed the report in part and overruled it in part and denied all motions. The order allowed the Receiver $750. for his services; $250. for attorneys' fees; dis-

allowed an item of $481. paid to A. W. Schostak for services as manager but allowed the sum of $300. therefor and directed the Receiver to pay the balance into the Registry of the Court.

The Complainant then appealed.

The controversy between the Receiver and the parties to the cause is an extraordinary one. The Receiver seemed by his activities to involve the parties in greater and more difficult complexities than their transactions with each other produced and having gone to the court for an adjustment of their differences became more involved through the Court Receiver and his tenacious possession of the properties after a settlement of their own differences than their own transactions created, which were speedily settled between them.

Ordinarily the Court is loath to interfere with a Chancellor's discretion in the allowance of fees to its officers for services efficiently performed, but in the case at bar the Court is of the opinion that the charges contained in the objections to the Report are too serious to be summarily dismissed without suitable investigation.

An allowance made to a Receiver of a going business as well as any class of property should be controlled by considerations of efficiency in the handling of the property: conservatism in its management; economy in administration; the value of property involved and the measure of responsibility which it entails. It appears to the Court that the allowances made to the Receiver were excessive, so the orders appealed from are reversed and the cause remanded with instructions to make an investigation into the charges contained in the objections to the Report and a readjustment of the allowances made

to the Receiver as the evidence in the matter warrants. So ordered.

WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.

BUFORD, C.J. (dissenting):

I think that the matter of fixing the fees and compensation of a Receiver appointed by the Circuit Court is one which rests in the sound judicial discretion of the Court having jurisdiction of the Receiver. When compensation for a Receiver has been so fixed by the Court under which such Receiver has served the Order should not be disturbed by an appellate Court unless an abuse of judicial discretion is clearly shown. I find nothing in the record to warrant this Court in holding that an abuse of judicial discretion is clearly shown to have occurred in the fixing of the fee and compensation allowed the Receiver.